UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAXIM GROUP LLC,

                Plaintiff,            07 CV 8099 (LAP)

    - against -

LIFE PARTNERS HOLDINGS, INC.,

                Defendant.

---

MEMORADUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

 

**LeClairRyan,**
A Professional Corporation
Attorneys for Defendant
  Life Partners Holdings, Inc.

Andrew J. Frisch (AF-9393)
830 Third Avenue
New York, New York 10022
(212) 430-8031

Robert P. Howard, Jr.
1101 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 659-6707
  Of Counsel

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument

  Maxim Failed to Deliver Proposed
  Warrant Certificates to Life Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

```
```

## TABLE OF AUTHORITIES

Atsi Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) . . . . . . . 6

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1965 (2007) . . . . . . . . . . . . . . . . . . . . . 6, 7

Diffusion Finance S.A.R.L. v. Smith, 1997 U.S. Dist. 7129 (S.D.N.Y. 1997). . . . . 7, 8

Eastman Kodak Co. v. Bostic, 1991 U.S. Dist. LEXIS 16396 (S.D.N.Y. 1991) . . . . 8

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kahn v. NYU Medical Center, 2007 U.S. Dist. 49840 (S.D.N.Y. 2007) . . . . . . . . . . 6

Oppenheimer & Co., Inc. v. Oppenheim, 86 N.Y.2d 685 (1995) . . . . . . . . . . . . . . 7, 9

Packer, Wilbur & Co. v. Leasepac Corp., 1974 U.S. Dist. LEXIS 12431
(S.D.N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157 (1990) . . . . . . . . . . . . . . 9

PRELIMINARY STATEMENT

Defendant Life Partners Holdings, Inc. ("Life Partners")[1] moves, pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint of Plaintiff Maxim Group LLC ("Maxim") for failure to state a claim on which relief can be granted.

Plaintiff Maxim, an investment banking, securities and investment management firm headquartered in New York, New York, is registered as a broker-dealer with the Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.

Defendant Life Partners is a Texas corporation with its principal place of business in Waco, Texas. Life Partners is publicly traded on the NASDAQ market under the symbol LPHI. Life Partners, through its wholly-owned subsidiary Life Partners, Inc., assists investors in buying interests in life insurance policies placed for sale on the national market.

Maxim claims that Life Partners breached paragraph 3(a)(ii) of a written contract with Maxim, executed in October 2004, by failing to deliver a warrant for 100,000 shares of Life Partners to Maxim as compensation for "Maxim's performance of the services" outlined in the contract. Complaint ¶ 9. By the express terms of paragraph 3(a)(ii), Maxim's right to the warrant was conditioned on Maxim delivering proposed warrant certificates to Life Partners, see Contract at ¶ 3(a)(ii)[2], and on Maxim's performance of the services specified in the contract. Contract at ¶ 3. The contract

---

[1] The Complaint inaccurately identifies Life Partners as "Life Partner Holdings, Inc." The correct name is "Life Partners Holdings, Inc."

[2] The contract between Maxim and Life Partners is Exhibit A to Maxim's complaint.

required Maxim to deliver the proposed warrant certificates simultaneously with its delivery of the proposed contract for signature. Maxim failed to deliver the warrant certificates. The contract also required Maxim to perform the services specified in the contract. Maxim failed to perform the services specified in the contract.

Maxim tries to avoid these facts though the use of boilerplate language in its complaint, claiming that it "performed all conditions, covenants and promises . . . in accordance with the terms and conditions of the Contract." Complaint at ¶ 17. Maxim's complaint makes absolutely no reference to its contractual obligation to deliver warrant certificates as a condition precedent of any grant of the warrant. Instead, Maxim attaches the contract as an exhibit to its complaint (without attaching any proposed warrant certificates), Complaint at ¶ 6, alleges that Life Partners breached the contract, Complaint at ¶ 18, restates almost verbatim the sentence of the contract which describes the warrant, Complaint at ¶ 9, but fails even to acknowledge the very next sentence of the contract which describes Maxim's obligation to make timely delivery of the proposed warrant certificates as a condition precedent to the grant.

In October 2004, Maxim delivered the contract to Life Partners for signature, which Life Partners executed. Maxim never delivered the warrant certificates, which Life Partners never saw, reviewed, approved of nor executed. Thereafter, Maxim did not provide the services for which Life Partners contracted and for which the warrant was intended as compensation. Thus, Maxim's complaint fails to state a claim on which relief can be granted, and the complaint should be dismissed.

STATEMENT OF FACTS

By letter drafted by Maxim and sent to Life Partners on or about October 25, 2004, Maxim confirmed its understanding of the parties' agreement by which Maxim would provide certain "general financial advisory and investment banking services" to Life Partners. Maxim requested that Life Partners sign the letter "[i]f the foregoing correctly sets forth our agreement." Contract at 7.

The first numbered paragraph of the letter agreement described Maxim's anticipated services to Life Partners, identified in the letter as the "Company:"

> 1. Retention. The Company hereby retains Maxim, during the term of this agreement, as its exclusive financial advisor and investment banker . . . to provide general financial advisory and investment baking services, and Maxim accepts such retention on the terms and conditions set forth in this Agreement. In such capacity, maxim shall: (i) familiarize itself, to the extent appropriate and feasible, with the business operations, properties, financial condition, management and prospects of the Company; (ii) advise the Company on matters relating to its capitalization; (iii) evaluate alternative financing structures and arrangements; (iv) assist the Company in developing appropriate acquisition criteria and identifying target industries; (v) assist the Company in evaluating and make recommendations concerning the relationships among the Company's various lines of business and potential areas for business growth; and (vi) provide such other financial advisory and investment banking services upon which the parties may mutually agree . . . .

Contract at 1.

The third numbered paragraph of the letter agreement described three separate elements of Maxim's compensation for its anticipated services:

> 3. Compensation. As consideration for Maxim's services pursuant to this Agreement, Maxim shall be entitled to receive, and the Company agrees to pay Maxim, the following compensation:
>
> (a)(i) a non-refundable cash fee of $25,000 payable upon execution of this Agreement (**"Initial Advisory Fee"**), and (ii) The Company shall grant to Maxim a warrant (**"Warrant"**) to purchase 100,000 shares of the Company's common stock. The Warrant shall be exercisable at any time during the five-year period commencing on the date hereof at an exercise price of $7.00 per

4

share.³ The Warrant shall provide for immediate registration at the optionee's expense as well as other provisions, including, without limitation, those pertaining to cashless exercise, anti-dilution protection and piggyback registration rights, <u>contained in the Warrant certificates delivered to the Company together with this Agreement</u>. The fees appearing in <u>Exhibit B</u> (hereto, the "**Fee Schedule**") shall be earned by and paid to Maxim by the Company, in connection with financings or transactions undertaken by the Company, the terms of which will be will be [sic] mutually agreed upon under separate advisory, placement agency and/or underwriting agreements.

Contract at 2 (emphasis added). Thus, the contract provided that only the "Initial Advisory Fee" of $25,000 was a non-refundable retainer, and the remaining compensation, including the warrant, was "consideration for Maxim's services pursuant to this Agreement." <u>Id</u>.

The letter agreement's eighth numbered paragraph provided that the term of the agreement would be six months and would thereafter continue on a month-to-month basis, during which either party could terminate the agreement on notice. In the event of such termination, the letter agreement provided that Life Partners would pay Maxim "all compensation earned through the date of such termination . . . pursuant to any provision of Section 3 hereof. . . ." Contract at 4.

The eleventh numbered paragraph of the agreement provided that the letter agreement "may not be modified or amended except in a writing duly executed by the parties hereto." Contract at 5.

Maxim did not fulfill its obligation, as stated in its letter to Life Partners, to deliver proposed certificates describing terms and conditions of the warrant. Life Partners never saw, reviewed, approved of or executed any certificates. Furthermore, apart from some minimal contacts between Maxim and Life Partners in the months

---

³ As of the date that Maxim filed its complaint with this Court, September 14, 2007, Life Partners' shares were trading at $31.80 per share. http:/moneycentral.msn.com.

5

immediately subsequent to execution of the contract in October 2004, Maxim and Life Partners had no further contact until mid-2007 when Maxim demanded the warrant. No undertakings or any other transactions were consummated by Life Partners as the result of its contract with Maxim.

## ARGUMENT

### MAXIM FAILED TO DELIVER PROPOSED WARRANT CERTIFICATES TO LIFE PARTNERS

In order to survive a motion to dismiss, a complaint must contain sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1965 (2007); Atsi Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007). Conclusory allegations will not suffice. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels, and a formulaic recitation of the elements of a cause of action will not do." Kahn v. NYU Medical Center, 2007 U.S. Dist. 49840 (S.D.N.Y. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65). "[A] plaintiff must allege "enough facts to state a claim to relief that is plausible on its face . . . [If ] the plaintiff ha[s] not nudged [its] complaint across the line from conceivable to plausible," the complaint must be dismissed. Id. The Second Circuit requires "a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007); Bell Atlantic, 127 S. Ct. at 1964-1966; ATSI Communications, Inc., 493 F.3d at 87.

Maxim's complaint should be dismissed because its conclusory and formulaic allegation that it "performed all conditions, covenants and promises . . . in

accordance with the terms and conditions of the Contract," Complaint at ¶ 17, does not establish that it satisfied the condition precedent (delivery of the proposed warrant certificates) contained in the sole paragraph of the contract on which Maxim predicates its right to recovery. Maxim's deficiency does not raise an issue outside the four corners of its complaint, favoring resolution of the issue in early discovery. Rather, Maxim's failure of pleading is established by its own complaint and is precisely the type of "basic deficiency [that] should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic, 127 S. Ct. at 26-27 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Further litigation of this matter would be unnecessary and wasteful. "The formation of a contract generally depends on the existence of an offer, acceptance and consideration. After a contract has been formed, however, its express terms may establish conditions that affect a party's duty to render a promised performance. One such condition is a 'condition precedent', which has been defined as 'an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises.'" Diffusion Finance S.A.R.L. v. Smith, 1997 U.S. Dist. LEXIS 7129, *8-9 (S.D.N.Y. 1997), aff'd, 1998 U.S. App. LEXIS 2948 (2d Cir. 1998) (quoting John D. Calamari and Joseph M. Perillo, Contracts ("Calamari & Perillo") § 11-3 at 384 (2d ed. 1977) and citing Restatement (Second) of Contracts § 224 (1979)). "If the condition precedent does not occur and is not excused according to the express or implied terms of the contract, the conditional duty is discharged." Id. See Oppenheimer & Co., Inc. v. Oppenheim, 86 N.Y.2d 685, 690 (1995) (a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur

7

before a duty to perform a promise in the agreement arises." (quoting Calamari & Perillo, Contracts § 11-2, at 438 [3d ed]).

Under New York law, "the burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it." Diffusion Finance, 1997 U.S. Dist. LEXIS 7129 *8-9 n.7 (quoting Lindenbaum v. Royco Property Corp., 165 A.D.2d 254, 567 N.Y.S.2d 218, 219 (1st Dep't 1991)). Thus, as Maxim seeks to assert the existence of a contractual duty, it has the burden of proving the occurrence of conditions precedent to the performance of that duty.

In Eastman Kodak Co. v. Bostic, 1991 U.S. Dist. LEXIS 16396 (S.D.N.Y. 1991), timely delivery of a final audited balance sheet was an express written condition of defendants' obligations under an Option Agreement's purchase price adjustment clause. Responding to defendants' motion to dismiss for failure to state a claim based on the unsatisfied condition precedent, plaintiff argued that its own inadvertent failure to obtain certification of an uncertified balance sheet was immaterial to defendants' breach of contract. The court granted defendant's motion to dismiss, holding that "[c]onditions precedent are strictly enforced, in order to implement the parties' express agreement . . . . Strict construction of the terms of such an express agreement is especially appropriate where, as here, two sophisticated parties are involved:"

> Given that the certification requirement was an express condition precedent to any obligation to pay under the purchase price adjustment clause, the failure to obtain such certification is not an insignificant deviation from the terms of the Option Agreement . . . . [K]odak has offered no convincing argument why it should benefit despite its negligent handling of this matter. Kodak cannot avoid the express terms of the Option Agreement merely because it has lost the opportunity to recover a substantial amount of money.

Id. at 8, 12. Similarly, in Packer, Wilbur & Co. v. Leasepac Corp., 1974 U.S. Dist. LEXIS 12431 (S.D.N.Y. 1974), summary judgment was entered against the plaintiff which failed to satisfy a condition precedent that it make a written registration request for registration of a warrants. See W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms").

Interpretation as a means of reducing the risk of a plaintiff's forfeiture cannot be employed if "the occurrence of the event as a condition is expressed in unmistakable language." Oppenheimer & Co., 86 N.Y.2d at 691 (quoting Restatement [Second] of Contracts § 229, comment a, at 185; see § 227, comment b (where language is clear, "[t]he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results").

Maxim drafted an agreement in which it assumed the duty of drafting and delivering proposed warrant certificates to Life Partners for review, approval and signature. It otherwise drafted contract provisions that barred any modification or amendment to the contract's terms and conditions other than in writing. Maxim has not alleged that it satisfied the express condition of delivering proposed warrant certificates to Life partners for review, approval and signature contemporaneous with the delivery of the contract. After almost three years after its non-performance of that contract provision, and after not providing the services for which Life Partners contracted, Maxim should not now be permitted to avoid the express terms of its agreement and ask the

9

Court to overlook its non-performance so that it may litigate a claim of right to compensation to which it is not entitled.

      For these reasons, Maxim's complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim.

      Respectfully submitted,

      **LeClairRyan,**
      A Professional Corporation
      Attorneys for Defendant Life Partners Holdings, Inc.

By:  /s/ Andrew J. Frisch
      Andrew J. Frisch (AF-9393)
      830 Third Avenue
      New York, New York 10022
      (212) 430-8031

      Robert P. Howard, Jr.
      1101 Connecticut Avenue, N.W.
      Washington, D.C. 20036
      (202) 659-6707
        Of Counsel

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November, 2007, a copy of the foregoing was delivered via facsimile and United States Mail, postage prepaid, to

Matthew F. Schwartz, Esq.
Schwartz & Ponterio, PLLC
  Attorneys for Plaintiff Maxim Group LLC
134 West 29th Street
New York, New York 10001
(212) 714-1264 (facsimile)

    /s/ Andrew J. Frisch
    Andrew J. Frisch