LeCLAIR RYAN, a Professional Corporation
Andrew J. Frisch
830 Third Avenue
New York, New York 10022
Telephone: (212) 430-8031
Facsimile:  (212) 430-8061

Attorneys for Defendant
  Life Partners Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAXIM GROUP LLC,                                           Case No. 07 CV 8099 (LAP)

               Plaintiff,

    -against-

LIFE PARTNERS HOLDINGS, INC.,

               Defendant.

---

**LIFE PARTNERS HOLDINGS, INC.'S MEMORADUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Indisputable Facts . . . . . . . . . . . . . . . . . . 2

Argument

    Maxim Failed to Deliver Proposed Warrant Certificates to Life Partners . . 5

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . 9

TABLE OF AUTHORITIES

Altman v. Curtiss-Wright Corp., 124 F.2d 177 (2d Cir. 1941) . . . . . . . . . . 1

Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986) . . . . . . . . . . . . . 5

Diffusion Finance S.A.R.L. v. Smith, 1997 U.S. Dist. LEXIS 7129
(S.D.N.Y. 1997), aff'd, 1998 U.S. App. LEXIS 2948 (2d Cir. 1998) . . . . . . . 6

Eastman Kodak Co. v. Bostic, 1991 U.S. Dist. LEXIS 16396 (S.D.N.Y. 1991) . . 6

Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007) . . . . . . . . . . . . 5

Mutual Marine Office, Inc. v. Employers Mutual Casualty Co., 485 F. Supp. 351
(S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Oppenheimer & Co., Inc. v. Oppenheim, 86 N.Y.2d 685, 690 (1995) . . . . . . . 6

Packer, Wilbur & Co. v. Leasepac Corp., 1974 U.S. Dist. LEXIS 12431
(S.D.N.Y. 1974) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) . . . . . . 7

LeCLAIR RYAN, a Professional Corporation
Andrew J. Frisch
830 Third Avenue
New York, New York 10022
Telephone: (212) 430-8031
Facsimile: (212) 430-8061

Attorneys for Defendant
  Life Partners Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAXIM GROUP LLC,                           Case No. 07 CV 8099 (LAP)

           Plaintiff,

-against-

LIFE PARTNERS HOLDINGS, INC.,

           Defendant.

---

### LIFE PARTNERS HOLDINGS, INC.'S MEMORADUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a), Defendant Life Partners Holdings, Inc. ("Life Partners"), by counsel, submits this memorandum in support of its motion for summary judgment.

### PREIMINARY STATEMENT

Defendant Life Partners seeks summary judgment at this early stage to avoid the unnecessary delay and expense of litigation and because it is entitled to judgment as a matter of law. See Altman v. Curtiss-Wright Corp., 124 F.2d 177 (2d Cir. 1941); Mutual Marine Office, Inc. v. Employers Mutual Casualty Co., 485 F. Supp. 351 (S.D.N.Y. 1980).

In October 2004 Plaintiff Maxim Group LLC ("Maxim") and Life Partners executed a contract in the form of a letter, drafted by Maxim and sent by it to Life Partners, by which Maxim agreed to provide certain financial services to Life Partners (the "Contract"). Section 3(a)(ii) of the Contract required Maxim to deliver proposed warrant certificates to purchase 100,000 shares of Life Partners' common stock, exercisable at any time during the five-year period commencing with the date of the Contract, at an exercise price of $7.00 per share[1] simultaneously with its delivery of the proposed contract for signature.

While the parties differ as to why the relationship intended by the contract failed to materialize, there appears to be no dispute that Maxim failed to satisfy the condition precedent to the grant of the warrant – providing draft warrant certificates for review and approval simultaneously with the proposed Contract.

Thus, because Life Partners is entitled to judgment as a matter of law, it seeks an order of summary judgment in its favor.[2]

## STATEMENT OF INDISPUTABE FACTS

On September 14, 2007, Maxim, an investment banking firm and FINRA registered broker-dealer, filed a complaint against Life Partners alleging breach of contract and seeking specific performance. Life Partners is a Texas corporation with its principal place of business in Waco, Texas. Life Partners is publicly traded on the

---

[1] As of the date that Maxim filed its complaint with this Court, September 14, 2007, Life Partners' shares were trading at $31.80 per share. http://moneycentral.msn.com.

[2] Prior to making this motion for summary judgment, Life Partners moved to dismiss Maxim's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for its failure to plead satisfaction of the condition precedent. Upon Maxim's counsel's presentation to Life Partner's counsel that Maxim's general allegations were sufficient to survive a motion to dismiss, Life Partners withdrew its 12(b)(6) motion, answered and filed this motion.

NASDAQ market under the symbol LPHI. Life Partners, through its wholly-owned subsidiary Life Partners, Inc., assists investors in buying interests in life insurance policies placed for sale on the national market.

Maxim's claim is based solely on a contract between Maxim and Life Partners attached as Exhibit A to the Complaint. The contract is in the form of a letter, dated October 25, 2004, drafted by Maxim and sent to Life Partners. The Contract states that Maxim would provide certain "general financial advisory and investment banking services" to Life Partners. Contract at 1. Maxim requested that Life Partners sign the letter "[i]f the foregoing correctly sets forth our agreement." Contract at 7.

The first numbered paragraph of the letter agreement described Maxim's anticipated services to Life Partners, identified in the letter as the "Company," as follows:

> 1. <u>Retention</u>. The Company hereby retains Maxim, during the term of this agreement, as its exclusive financial advisor and investment banker . . . to provide general financial advisory and investment baking services, and Maxim accepts such retention on the terms and conditions set forth in this Agreement. In such capacity, maxim shall: (i) familiarize itself, to the extent appropriate and feasible, with the business operations, properties, financial condition, management and prospects of the Company; (ii) advise the Company on matters relating to its capitalization; (iii) evaluate alternative financing structures and arrangements; (iv) assist the Company in developing appropriate acquisition criteria and identifying target industries; (v) assist the Company in evaluating and make recommendations concerning the relationships among the Company's various lines of business and potential areas for business growth; and (vi) provide such other financial advisory and investment banking services upon which the parties may mutually agree . . . .

Contract at 1.

The third numbered paragraph of the letter agreement described the three separate elements of Maxim's compensation for its anticipated services as follows:

> 3. <u>Compensation</u>. As consideration for Maxim's services pursuant to this Agreement, Maxim shall be entitled to receive, and the Company agrees to pay Maxim, the following compensation:

3

>(a)(i) a non-refundable cash fee of $25,000 payable upon execution of this Agreement (**"Initial Advisory Fee"**), and (ii) The Company shall grant to Maxim a warrant (**"Warrant"**) to purchase 100,000 shares of the Company's common stock. The Warrant shall be exercisable at any time during the five-year period commencing on the date hereof at an exercise price of $7.00 per share. The Warrant shall provide for immediate registration at the optionee's expense as well as other provisions, including, without limitation, those pertaining to cashless exercise, anti-dilution protection and piggyback registration rights, <u>contained in the Warrant certificates delivered to the Company together with this Agreement</u>. The fees appearing in <u>Exhibit B</u> (hereto, the **"Fee Schedule"**) shall be earned by and paid to Maxim by the Company, in connection with financings or transactions undertaken by the Company, the terms of which will be will be [sic] mutually agreed upon under separate advisory, placement agency and/or underwriting agreements.

Contract at 2 (emphasis added). Thus, the contract provided that only the "Initial Advisory Fee" of $25,000 was a retainer, and the remaining compensation, including the warrant, was "consideration for Maxim's services pursuant to this Agreement." <u>Id</u>.

The letter agreement's eighth numbered paragraph provided that the term of the agreement would be six months and would thereafter continue on a month-to-month basis, during which either party could terminate the agreement on notice. In the event of such termination, the letter agreement provided that Life Partners would pay Maxim "all compensation earned through the date of such termination . . . pursuant to any provision of Section 3 hereof. . . ." Contract at 4.

The eleventh numbered paragraph of the agreement provided that the letter agreement "may not be modified or amended except in a writing duly executed by the parties hereto." Contract at 5.

Maxim did not fulfill its obligation, as stated in its letter to Life Partners, to deliver proposed certificates describing terms and conditions of the warrant. R. Scott Peden, Esq., Corporate Secretary of Life Partners, caused a thorough search to be done of

4

Life Partners' books, records and electronic communications for any warrant certificates delivered to Life Partners as described in the agreement, and the search found no such warrant certificates. Peden Declaration at ¶ 2. In his position as Corporate Secretary, Mr. Peden would have been aware in October 2004 if a warrant certificate had been delivered by Maxim as described in the agreement, and he is not aware of the delivery or existence of any such warrant certificate. Peden Declaration at ¶ 3.[3]

## ARGUMENT

### MAXIM FAILED TO DELIVER PROPOSED WARRANT CERTIFICATES TO LIFE PARTNERS

A court must grant summary judgment on a party's motion whenever the record establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the facts, and any reasonable inferences, must be taken most favorably to the non-movant. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). "Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of the motion." Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007) (quoting Harlen Assocs. V. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).

Maxim's allegations rest solely on the written terms of the Contract Maxim attached as Exhibit A to its Complaint. Since, by the express language of Maxim's Contract, Maxim failed to satisfy a condition precedent to the relief it seeks, summary judgment in favor of Life Partners should be granted.

---

[3] The parties do not dispute that neither undertakings nor any transactions were consummated by Life Partners as the result of its contract with Maxim.

5

"The formation of a contract generally depends on the existence of an offer, acceptance and consideration. After a contract has been formed, however, its express terms may establish conditions that affect a party's duty to render a promised performance. One such condition is a 'condition precedent', which has been defined as 'an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises.'" Diffusion Finance S.A.R.L. v. Smith, 1997 U.S. Dist. LEXIS 7129, *8-9 (S.D.N.Y. 1997), aff'd, 1998 U.S. App. LEXIS 2948 (2d Cir. 1998) (quoting John D. Calamari and Joseph M. Perillo, Contracts ("Calamari & Perillo") § 11-3 at 384 (2d ed. 1977) and citing Restatement (Second) of Contracts § 224 (1979)). "If the condition precedent does not occur and is not excused according to the express or implied terms of the contract, the conditional duty is discharged." Id. See Oppenheimer & Co., Inc. v. Oppenheim, 86 N.Y.2d 685, 690 (1995) (a condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." (quoting Calamari & Perillo, Contracts § 11-2, at 438 [3d ed])). Under New York law, "the burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it." Diffusion Finance, 1997 U.S. Dist. LEXIS 7129 *8-9 n.7 (quoting Lindenbaum v. Royco Property Corp., 165 A.D.2d 254, 567 N.Y.S.2d 218, 219 (1st Dep't 1991)).

In Eastman Kodak Co. v. Bostic, 1991 U.S. Dist. LEXIS 16396 (S.D.N.Y. 1991), timely delivery of a final audited balance sheet was an express written condition of defendants' obligations under an Option Agreement's purchase price adjustment clause. Responding to defendants' motion to dismiss for failure to state a claim based on

6

the unsatisfied condition precedent, plaintiff argued that its own inadvertent failure to obtain certification of an uncertified balance sheet was immaterial to defendants' breach of contract. The court granted defendant's motion to dismiss, holding that "[c]onditions precedent are strictly enforced, in order to implement the parties' express agreement . . . . Strict construction of the terms of such an express agreement is especially appropriate where, as here, two sophisticated parties are involved:

> Given that the certification requirement was an express condition precedent to any obligation to pay under the purchase price adjustment clause, the failure to obtain such certification is not an insignificant deviation from the terms of the Option Agreement . . . . [K]odak has offered no convincing argument why it should benefit despite its negligent handling of this matter. Kodak cannot avoid the express terms of the Option Agreement merely because it has lost the opportunity to recover a substantial amount of money.

Id. at 8, 12. Similarly, in Packer, Wilbur & Co. v. Leasepac Corp., 1974 U.S. Dist. LEXIS 12431 (S.D.N.Y. 1974), summary judgment was entered against the plaintiff which failed to satisfy a condition precedent that it make a written registration request for registration of a warrants. See W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms").

Interpretation as a means of reducing the risk of a plaintiff's forfeiture cannot be employed if "the occurrence of the event as a condition is expressed in unmistakable language." Oppenheimer & Co., 86 N.Y.2d at 691 (quoting Restatement [Second] of Contracts § 229, comment a, at 185; see § 227, comment b (where language is clear, "[t]he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results")).

Maxim drafted an agreement in which it assumed the duty of drafting and delivering proposed warrant certificates to Life Partners for review, approval and signature contemporaneous with the delivery of the contract. It otherwise drafted contract provisions that barred any modification or amendment to the contract's terms and conditions other than in writing. Maxim did not satisfy the express condition of delivering proposed warrant certificates to Life Partners for review, approval and signature contemporaneous with the delivery of the contract or at any time thereafter. After almost three years after its non-performance of that contract provision,[4] Maxim should not be allowed to pursue a claim of damages based on the contractual clause that Maxim itself ignored.

For these reasons, summary judgment should be granted in favor of Life Partners.

        Respectfully submitted,

        LeCLAIR RYAN,
        A Professional Corporation
        Attorneys for Defendant
         Life Partners Holdings, Inc.

By: /s/ Andrew J. Frisch
   Andrew J. Frisch
   830 Third Avenue
   New York, New York 10022
   Telephone: (212) 430-8031
   Facsimile: (212) 430-8061

   Robert P. Howard, Jr.
   1101 Connecticut Avenue, N.W.
   Washington, D.C. 20036
    Of Counsel

---

[4] Life Partners disputes that Maxim performed the services it agreed to provide under the terms of the Contract. However, the Court does not need to reach this issue given Maxim's failure to satisfy the condition precedent to the issuance of the warrant.

## CERTIFICATE OF SERVICE

I, ANDREW J. FRISCH, certify the following to be true under the penalties of perjury: on December 5, 2007, I served the within MEMORANDUM OF LAW on the party listed below by depositing one true copy of said paper to the addresses listed below, enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

>Matthew Schwartz,, Esq.
>134 West 29th Street – Suite 1006
>New York, New York 10001

Dated: New York, New York
December 5, 2007

/s/ Andrew J. Frisch
Andrew J. Frisch