UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAXIM GROUP LLC,                                  :

                        Plaintiff,         :          Dkt. No. 07 CV 8099 (LAP)

                               :

     -against-                                        :

                               :

LIFE PARTNER HOLDINGS, INC.,                       :

                               :

                   Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

Plaintiff Maxim Group LLC, by its attorneys Schwartz & Ponterio, PLLC, hereby responds to defendant Life Partners Holdings, Inc.'s ("LPHI") Rule 56.1 Statement in support of their motion for Summary Judgment, and further states the Issues Requiring Trial as set forth below.

**LPHI Statement No. 1**

On September 14, 2007, Maxim Group LLC ("Maxim"), an investment banking firm and FINRA registered broker-dealer, filed a complaint against Life Partners alleging breach of contract and seeking specific performance. Complaint.

**Response to LPHI Statement No. 1**

Admitted.

**LPHI Statement No. 2**

Life Partners is a Texas corporation with its principal place of business in Waco, Texas, Life Partners is publicly traded on the NASDAQ market under the symbol LPHI. Life Partners, through its wholly-owned subsidiary Life Partners, Inc., assists investors in buying interests in life insurance policies placed for sale on the national market. Complaint at ¶ 4; Peden Declaration at ¶ 1.

**Response to LPHI Statement No. 2**

Admitted.

**LPHI Statement No. 3**

Maxim's claim is based solely on a contract between Maxim and Life Partners attached as Exhibit A to the Complaint. The contract is in the form of a letter, dated October 25, 2004, drafted by Maxim and sent to Life Partners.  Complaint, Exhibit A.

**Response to LPHI Statement No. 3**

Maxim admits that the claim is based on the Contract annexed as Exhibit A to the

Complaint and states that Maxim and LPHI both participated in the negotiation and drafting of

the Contract.  Scott Decl., ¶¶ 9-11, Exhs. 2-3.

**LPHI Statement No. 4**

The Contract states that Maxim would provide certain "general financial advisory and investment banking services" to Life Partners. Maxim requested that Life Partners sign the letter "[i]f the foregoing correctly sets forth our agreement." Complaint, Exhibit A.

**Response to LPHI Statement No. 4**

Admitted.

**LPHI Statement No. 5**

The first numbered paragraph of the letter agreement described Maxim's anticipated services to Life Partners, identified in the letter as the "Company," as follows:

1. Retention. The Company hereby retains Maxim, during the term of this agreement, as its exclusive financial advisor and investment banker... to provide  general financial advisory and investment baking services, and Maxim accepts such retention on the terms and conditions set forth in this Agreement. In such capacity, maxim shall: (i) familiarize itself, to the extent appropriate and feasible, with the business operations, properties, financial condition, management and prospects of the Company; (ii) advise the Company on matters relating to its capitalization; (iii) evaluate alternative financing structures and arrangements; (iv) assist the Company in developing appropriate acquisition criteria and identifying target

industries; (v) assist the Company in evaluating and make recommendations concerning the relationships among the Company's various lines of business and potential areas for business growth; and (vi) provide such other financial advisory and investment banking services upon which the parties may mutually agree.... Complaint, Exhibit A.

## Response to LPHI Statement No. 5

Admitted.

## LPHI Statement No. 6

The third numbered paragraph of the letter agreement described the three separate elements of Maxim's compensation for its anticipated services as follows:

3. <u>Compensation</u>. As consideration for Maxim's services pursuant to this Agreement, Maxim shall be entitled to receive, and the Company agrees to pay Maxim, the following compensation:

(a)(i) a non-refundable cash fee of $25,000 payable upon execution of this Agreement ("Initial Advisory Fee"), and (ii) The Company shall grant to Maxim a warrant ("Warrant") to purchase 100,000 shares of the Company's common stock. The Warrant shall be exercisable at any time during the five- year period commencing on the date hereof at an exercise price of $7.00 per share. The Warrant shall provide for immediate registration at the optionee's expense as well as other provisions, including, without limitation, those pertaining to cashless exercise, anti-dilution protection and piggyback registration rights, contained in the Warrant certificates delivered to the Company together with this Agreement. The fees appearing in <u>Exhibit B</u> (hereto, the "Fee Schedule") shall be earned by and paid to Maxim by the Company, in connection with financings or transactions undertaken by the Company, the terms of which will be will be [sic] mutually agreed upon under separate advisory, placement agency and/or underwriting agreements.  Complaint, Exhibit A.

## Response to LPHI Statement No. 6

Admitted.

## LPHI Statement No. 7

The contract provided that only the "Initial Advisory Fee" of $25,000 was a retainer, and the remaining compensation, including the warrant, was

**"consideration for Maxim's services pursuant to this Agreement."**
**Complaint, Exhibit A.**

**Response to LPHI Statement No. 7**

Maxim admits that the Contract required LPHI to pay Maxim $25,000 and grant Maxim a

warrant to purchase 100,000 shares of LPHI common stock.  Maxim states that all compensation

described in the Contract was consideration for services rendered by Maxim and respectfully

refers the Court to the actual Contract itself.  Scott Decl., Exh. A.

**LPHI Statement No. 8**

     **The letter agreement's eighth numbered paragraph provided that the**
**term of the agreement would be six months and would thereafter continue on**
**a month-to-month basis, during which either party could terminate the**
**agreement on notice.  In the event of such termination, the letter agreement**
**provided that Life Partners would pay Maxim "all compensation earned**
**through the date of such termination. . . pursuant to any provision of Section**
**3 hereof. . . ."  Complaint, Exhibit A.**

**Response to LPHI Statement No. 8**

Maxim admits that the Contract provided for an initial six month term and for a month-

to-month continuation thereafter.  Maxim respectfully refers the Court to the actual Contract

itself.  Scott Decl., Exh. A.  Maxim further states that LPHI never terminated the Contract.  Scott

Decl., ¶ 51.

**LPHI Statement No. 9**

     **The eleventh numbered paragraph of the agreement provided that the**
**letter agreement "may not be modified or amended except in a writing duly**
**executed by the parties hereto." Complaint, Exhibit A.**

**Response to LPHI Statement No. 9**

Maxim admits that the Contract provided for amendment by writing and respectfully

refers the Court to the actual Contract itself.  Scott Decl., Exh. A.

**LPHI Statement No. 10**

> **Maxim did not fulfill its obligation, as stated in its letter to Life Partners, to deliver proposed certificates describing terms and conditions of the warrant. Peden Declaration at ¶ 23.**

**Response to LPHI Statement No. 10**

Denied.  Maxim performed all of its obligations under the Contract.  Scott Decl., ¶¶ 23-49, Maxim had no obligation to deliver warrant certificates to LPHI and, in any event, warrant certificates were available to LPHI as it acknowledged when it signed the Contract, either by way of Maxim delivering them or from LPHI's records from prior warrants.  Scott Decl., ¶¶ 20-21, Exh. 1.

**LPHI Statement No. 11**

> **No undertakings nor any transactions were consummated by Life Partners as the result of its agreement with Maxim. Complaint at 11.**

**Response to LPHI Statement No. 11**

Maxim admits that no transactions occurred that would have given rise to a right to compensation under the Fee Schedule annexed as Exhibit B to the Contract.  Maxim performed all of its obligations under the Contract and, based on Maxim's efforts, a number of investors purchased LPHI stock.  Scott Decl., ¶¶ 38-39,

## ISSUES REQUIRING TRIAL

1.    Whether Maxim performed its obligations under the Contract.  LPHI claims, without submitting any evidence, that Maxim did not perform.  LPHI Rule 56 Statement, ¶ 10. Maxim performed all of its obligations under the Contract as described in the accompanying Declaration of Andrew Scott.  Scott Decl., ¶¶ 23-49.

2.    Whether warrant certificates were delivered to LPHI at the time the Contract was executed.  LPHI claims no certificates were delivered.  Maxim had no obligation to deliver

warrant certificates to LPHI and, in any event, warrant certificates were available to LPHI as it acknowledged when it signed the Contract. <u>Scott Decl.</u>, ¶¶ 21-22, Exh. 1.

      3.     Whether Maxim was obligated to deliver warrant certificates to LPHI at the time the Contract was executed. LPHI claims Maxim had such an obligation. Maxim contends it had no such obligation. <u>Scott Decl.</u>, ¶¶ 21-22, Exh. 1; <u>Teller Decl.</u>, ¶¶ 10-12, Exh. 1. In any event, warrant certificates were available to LPHI as it acknowledged when it signed the Contract. <u>Scott Decl.</u>, ¶¶ 21-22, Exh. 1.

      4.     The extent of damages owed by LPHI to Maxim. LPHI refused to issue the Warrant, despite repeated requests by Maxim. <u>Scott Decl.</u>, ¶¶ 50-52; <u>Rose Decl.</u>, ¶¶ 7-13, Exh. 9.

Dated: New York, New York
       January 25, 2008

                                  SCHWARTZ & PONTERIO, PLLC
                                  *Attorneys for Plaintiff*

By:                                    _____
                                    Matthew F. Schwartz (MS 9843)
                                    134 West 29th Street – Suite 1006
                                    New York, New York 10001
                                    Telephone: (212) 714-1200

6