UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MAXIM GROUP LLC,                                :
                                                :
                       Plaintiff,    :   Dkt. No. 07 CV 8099 (LAP)
                                                :
    -against-                              :   **DECLARATION OF**
                                                :   **EDWARD L. ROSE**
LIFE PARTNER HOLDINGS, INC.,                    :
                                                :
                       Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Edward L. Rose, declare as follows:

1. I am Vice Chairman and General Counsel of Maxim Group LLC ("Maxim"). I am responsible for overseeing the legal and compliance departments of the firm, as well as various administrative departments. Prior to founding Maxim, I was General Counsel of the Private Client Group and Director of Litigation for Investec Ernst & Company, a global financial services company headquartered in South Africa and the UK. I graduated from Fordham University School of Law in 1991 and I am admitted to practice law in New York.

2. In 2007, I was responsible for following up with defendant Life Partner Holdings, Inc. ("LPHI") to obtain and exercise the warrant it was required to grant Maxim under the terms of the October 28, 2004 contract (the "Contract") (Exhibit 1). As such, I have personal knowledge of the matters set forth herein. I respectfully submit this Declaration in opposition to LPHI's motion for summary judgment.

3. As explained in Maxim's complaint and the other papers submitted on this motion for summary judgment, Maxim and LPHI entered into the Contract in October, 2004 under which Maxim agreed to provide certain investment banking services to LPHI. In return, LPHI agreed to pay Maxim $25,000 and to grant Maxim a warrant (the "Warrant") to purchase

100,000 shares of LPHI common stock for $7.00 per share. The Warrant vested fully upon execution of the Contract and was valid for 5 years.

4. As discussed in the Declaration of Andrew Scott, Maxim provided investment banking services to LPHI and fulfilled all of its obligations under the Contract. LPHI, however, failed to deliver the Warrant as required by the Contract.

5. In early September, 2007, when LPHI stock was trading at around $52 per share, its historical high, Maxim conducted a search of its files for the Warrant that LPHI was required to issue under the Contract. Maxim intended to exercise the Warrant fully and immediately sell all of the shares. At that point, the Warrant was worth approximately $4.5 million.

6. When we could not locate the Warrant, I contacted LPHI to advise them that we needed the Warrant and that Maxim intended to exercise its option fully and purchase 100,000 shares of LPHI common stock so that we could sell them.

7. I first contacted LPHI General Counsel Scott Peden by telephone on or about September 6, 2007. I advised Mr. Peden that I could not locate the Warrant and that Maxim intended to fully exercise its right to purchase the LPHI stock. At that time, I did not know whether LPHI had delivered the Warrant and Maxim had misplaced it or if LPHI had never delivered the Warrant. I advised Mr. Peden that, if the Warrant had been misplaced, Maxim would execute whatever affidavit was necessary in order to replace the Warrant. I made it clear to Mr. Peden that Maxim intended to exercise its rights to purchase the LPHI common stock fully and immediately. I also made it clear to Mr. Peden that Maxim intended to sell the LPHI stock immediately. Mr. Peden said he would get back to me. I urged him to do so quickly because time was of the essence.

8. I followed up with Mr. Peden immediately by sending him an e-mail with a copy of the Contract. A copy of this e-mail, and the others from my September, 2007 e-mail exchange with Mr. Peden and Mr. Pardo is annexed as Exhibit 9.

9. Mr. Peden did not call me back and I followed up by calling him repeatedly. I left messages for him reiterating my request that LPHI issue the Warrant and advising that Maxim intended to exercise its right to purchase 100,000 shares of LPHI common stock immediately and that Maxim intended to sell the shares. Mr. Peden did not return my phone calls.

10. I then contacted LPHI CEO Brian Pardo by telephone on Sunday, September 9, 2007. I explained the situation to Mr. Pardo and requested that LPHI issue the Warrant as required by the Contract. I made it clear to Mr. Pardo that Maxim intended to exercise its right to the full extent of the Warrant and that Maxim intended to sell the shares immediately. I also told him that the delay was a concern because of the potential volatility of the stock.

11. I followed up with Mr. Pardo with an e-mail later that day providing him with a copy of the Contract. See Exhibit 9. Mr. Pardo responded with an e-mail that same day stating that LPHI would comply with its obligations to issue a Warrant under the Contract:

> Ed –
>
> I apologize for Scott having ignored six calls from you. I assure you this is not company policy and we will take up that matter with Scott. **It appears to me that if the warrants were not delivered pursuant to a proper reading of the agreement the strike price is $7 per share.** If I am mis reading this I am sure you will point that out to me.
>
> **As I mentioned, we want to do the right thing and we will expeditiously do so.** Prior to the 5/4 split which has not occurred yet we had outstanding about 9.6 million shares out of 10 million authorized. Again, I apologize on Scott's behalf and, if you will please ask Andrew Scott to call me so we can catch up.
>
> Brian

Exhibit 9 (emphasis added).

12. Thereafter, however, Mr. Pardo changed course and made it clear that LPHI would not issue the Warrant. In an e-mail dated September 11, 2007, Mr. Pardo confirmed that LPHI would not issue the Warrant because, he claimed, LPHI had "discovered inconsistencies in our 'agreement' and prior relationship." He stated he was referring the matter to LPHI's attorneys but never identified a specific attorney and no attorney contacted me. Exhibit 9.

13. I responded with an e-mail making it clear to Mr. Pardo that, since the stock was then trading at $52, Maxim would seek full damages form LPHI for its refusal to issue the Warrant. See Exhibit 9. Mr. Pardo did not return my subsequent e-mails or phone calls. Although he claimed an attorney from Baker & McKenzie would call me, I received no such call. I then contacted Mr. Pardo and asked for the name and number of the attorney, but Pardo never responded and he refused to communicate with me further.

14. Because LPHI refused to grant the Warrant or to communicate any further, Maxim was forced to commence this lawsuit on September 19, 2007. Since that time, the LPHI share price has fallen precipitously, and is now trading at approximately $19 per share.

15. In its motion for summary judgment, LPHI now claims it did not issue the Warrant because, it claims, Maxim did not deliver a form of warrant certificate. In all of my communications with them, neither Mr. Peden nor Mr. Pardo ever made any reference to this as being the reason for not issuing the Warrant.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. 28 U.S.C. §1746.

Dated this 24 day of January, 2008.

EDWARD L. ROSE