UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAXIM GROUP LLC,                          :
                                          :
                    Plaintiff,            :        Dkt. No. 07 CV 8099 (LAP)
                                          :
        -against-                         :
                                          :
LIFE PARTNER HOLDINGS, INC.,              :
                                          :
                    Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


SCHWARTZ & PONTERIO, PLLC
*Attorneys for Plaintiff*
134 West 29th Street – Suite 1006
New York, New York 10001
Telephone: (212) 714-1200

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

INTRODUCTION.................................................................................................... 1

FACTUAL BACKGROUND

    A.    The Parties............................................................................................ 2

    B.    The Contract ........................................................................................ 3

    C.    Maxim Honors its Contractual Obligations ....................................... 4

    D.    LPHI Breaches the Contract ............................................................... 6

    E.    Procedural History .............................................................................. 7

LEGAL STANDARD .............................................................................................. 7

ARGUMENT

POINT I

MAXIM HAS ESTABLISHED ALL
ELEMENTS OF ITS CLAIM.................................................................................. 8

POINT II

THERE IS NO CONDITION PRECEDENT UNDER THE CONTRACT ............................. 9

    A.    Conditions Precedent Under New York Law ..................................... 10

    B.    The  Contract Contains No Language Creating a Condition Precedent ........ 11

    C.    LPHI Grossly Mischaracterizes the Contract.................................... 12

POINT III

THE FORFEITURE AND WAIVER DOCTRINES PRECLUDE
LPHI FROM USING THE NON-OCCURRENCE OF A CONDITION
PRECEDENT TO EXCUSE ITS FAILURE TO DELIVER THE WARRANT ................. 15

    A.    The Forfeiture Doctrine ..................................................................... 15

    B.    Waiver ................................................................................................. 17

CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

### Cases

*Aini, et al. v. Sun Taiyang Co., Ltd., et al.*,
   964 F. Supp. 762 (S.D.N.Y. 1997) ................................................................ 17

*Allbrand Discount Liquors, Inc. v Times Square Stores Corp.*,
   60 AD2d 568, 399 NYS2d 700 (2nd Dep't 1977) ................................ 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................................... 7-8

*Bridgeway Corp. v. Citibank, N.A.*,
   132 F.Supp.2d 297 (S.D.N.Y. 2001) ............................................................ 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548 (1986) .......................................................... 7

*Ginnett v. Computer Task Group, Inc.*,
   962 F.2d 1085 (2nd Cir. 1992) ..................................................................... 10

*Guity v. Martinez*,
   2004 WL 1145832 (S.D.N.Y. 2004) .............................................................. 8

*Harsco Corp. v. Segui*,
   91 F.3d 337, 348 (2d Cir. 1996) ..................................................................... 8

*Holdeen v. Rinaldo*,
   20 A.D.2d 597, 245 N.Y.S.2d 95 (3rd Dep't 1963) ............................ 16

*Jacob & Youngs, Inc. v. Kent*,
   230 N.Y. 239 (1921) ........................................................................................ 15

*Kennedy v. Automotive Maintenance Inc.*,
   87 Misc.2d 190, 384 N.Y.S.2d 921 (Suffolk Co. 1976) .................... 15

*Kidder Peabody & Co., Inc. v. Unigestion Intern., Ltd.*,
   903 F.Supp. 479 (S.D.N.Y. 1995) ............................................................... 10

*Lui v. Park Ridge at Terryville Ass'n*,
   601 N.Y.S.2d 496 (2nd Dep't 1993) ...................................................... 14-15

*Manning v. Michaels*,
   149 A.D.2d 897, 540 N.Y.S.2d 583 (3rd Dep't 1989) ......................... 14

*M.K. Metals v. Container Recovery Corp.*,
   645 F.2d 583 (8th Cir. 1981) ........................................................................ 10

## TABLE OF AUTHORITIES

### Cases (cont'd)

*In re New York Housing Development Corp.,*
  Not Reported in F.Supp., 1987 WL 494921 (S.D.N.Y. 1987) .......................................... 17

*Oppenheimer & Co. v. Oppenheim,*
  86 N.Y.2d 685, 636 N.Y.S.2d 734 (1995) ............................................................... 10, 16

*Praver v. Remsen Assoc.,*
  150 A.D.2d 540, 541 (2nd Dep't 1989) ....................................................................... 17

*Reiss v. Financial Performance Corp.,*
  97 N.Y.2d 195, 738 N.Y.S.2d 658 (2001) .................................................................... 13

*In re Saranac Central Sch. Dist.,*
  253 A.D.2d 566, 686 N.Y.S.2d 869 (3rd Dep't 1998) ..................................................... 11

*Schenectady Steel Co., Inc. v. Bruno Trimpoli General Construction Co., Inc.,*
  43 A.D.2d 234, 350 N.Y.S.2d 920 (3rd Dep't 1974) ...................................................... 17

*Sorba v. Pennsylvania Drilling Co., Inc.,*
  821 F.2d 200 (3d Cir. 1987)....................................................................................... 8

*Startech, Inc. v. VSA Arts,*
  126 F.Supp.2d 234 (S.D.N.Y. 2000) ............................................................................ 8

*Sunshine Steak Salad & Seafood, Inc.,*
  135 A.D.2d 891, 522 N.Y.S. 2d 292 (3rd Dep't 1987) .................................................... 17

*Unigard Sec. Ins. Co. v. North River Ins. Co.,*
  79 N.Y.2d 576, 584 N.Y.S.2d 290 (1992) .................................................................... 14

*USA Network v. Jones Intercable, Inc.,*
  729 F.Supp. 304 (S.D.N.Y. 1990) .............................................................................. 17

*Weiner v. Anesthesia Assocs. of Western Suffolk, P.C.,*
  203 A.D.2d 454, 610 N.Y.S.2d 606 (2nd Dep't 1994) ..................................................... 9

*Willis v. Ronan,*
  218 A.D.2d 794, 631 N.Y.S.2d 50 (2nd Dep't 1995) ...................................................... 14

*Witherell v. Lasky,*
  286 A.D. 533, 145 N.Y.S.2d 624 (4th Dep't 1955) ......................................................... 15

# TABLE OF AUTHORITIES

## Cases (cont'd)

*W.W.W. Associates, Inc. v. Giancontieri,*
   77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ....................................................... 12

*Yanuck v. Paston & Sons Agency,*
   209 A.D.2d 207, 618 N.Y.S.2d 295 (1st Dep't 1994) ........................................ 9

## Statutes

FRCP Rule 12(b)(6) ........................................................................................... 7

FRCP Rule 56 ............................................................................................... 1, 7

## Treatises and Law Reviews

Calamari and Perillo, Contracts § 11-5, at 440 [3rd ed] ................................... 10

2 Farnsworth, On Contracts § 8.2 (3rd ed. 2004) .......................................... 11

Restatement [Second] of Contracts § 224 ........................................................ 10

Restatement (Second) Contracts § 229 ............................................................ 16

13 Williston, On Contracts § 38:16 (4th ed. 2000) ........................................... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAXIM GROUP LLC,                    :

                    Plaintiff,       :          Dkt. No. 07 CV 8099 (LAP)
                                    :
        -against-                    :
                                    :
LIFE PARTNER HOLDINGS, INC.,         :
                                    :
                    Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Maxim Group LLC ("Maxim"), by its attorneys, Schwartz & Ponterio, PLLC,

respectfully submits this Memorandum of Law in opposition to the motion by defendant Life

Partner Holdings, Inc. ("LPHI") for summary judgment pursuant to FRCP Rule 56.

### INTRODUCTION

Maxim's claim against LPHI arises from: (1) a contract between the parties under which

Maxim agreed to provide investment banking services to LPHI and LPHI agreed to compensate

Maxim by, among other things, granting Maxim a warrant to purchase 100,000 shares of LPHI

common stock; (2) Maxim's performance of its obligations under the contract; and (3) LPHI's

refusal to grant the warrant as agreed under the contract.

In its motion for summary judgment, LPHI ignores undisputable evidence that establishes

that Maxim fulfilled its contractual obligations by performing extensive due diligence work,

advising LPHI with respect to alternative means of raising capita, introducing LPHI to potential

investors, and successfully inducing substantial investment in the company which resulted in

significant increase in the company's stock price.

LPHI instead distorts and mischaracterizes the plain terms of the contract to create, from whole cloth, a condition precedent which it then claims Maxim failed to fulfill. At base, LPHI's position is that it should be held legally immune from liability, even if it violated its contractual and legal obligations, and that Maxim is not entitled to compensation it earned. LPHI is wrong on all accounts.

As we show herein and in the papers submitted herewith, LPHI's motion relies on a fundamental misreading of the contract. The contractual provision that LPHI contends is a condition precedent does not meet the rigorous standard applicable to such provisions under New York law. Even if it did, under any reasonable reading of the contract, the condition was fulfilled upon execution of the contract. In any event, LPHI's subsequent conduct in accepting Maxim's investment banking services and refusing to deliver the warrant operates as a waiver of the condition. Finally, there are sharply disputed facts concerning Maxim's performance of its obligations under the contract such that to enforce a condition precedent under the circumstances would operate as an impermissible forfeiture.

These papers demonstrate that Maxim has fulfilled its obligations under the contract and that summary judgment must be denied.

## FACTUAL BACKGROUND

A brief summary of the facts relevant to this motion is set forth as follows:

**A.    The Parties**

Maxim is a limited liability company formed under New York law and does business as an investment banking, securities and investment management firm, registered as a broker-dealer with the S.E.C. Complt., ¶ 3, 5.[1] Among other undertakings, Maxim regularly provides both

---

[1] A copy of the Complaint is annexed to the defendant's motion as Exhibit A and shall be referred to herein as, "Complt., ¶ ___." References to the Contract shall be as, "Contract, § ___".

public and private companies with services in the following specialized areas: corporate finance, mergers and acquisitions, and corporate advisory services. Complt., ¶ 5. LPHI is a Texas corporation. Complt., ¶ 4.

**B.    The Contract**

On or about October 24, 2004, Maxim and LPHI entered a written contract (the "Contract") under which Maxim agreed to provide general financial advisory and investment banking services to LPHI. Scott Decl., ¶ 12, Exh. 1 Among other things, the Contract sets forth: (1) the services to be performed by Maxim; (2) the term of the agreement; (3) the compensation due Maxim for its performance; (4) the reimbursement of Maxim's expenses; and (5) the provisions for termination. Scott Decl., ¶ 13, Exh. 1.

Specifically, under Section 1 of the Contract, Maxim agreed to provide the following services to LPHI: (a) Maxim agreed to familiarize itself, to the extent appropriate and feasible, with the business, operations, properties, financial condition, management and prospects of LPHI; (b) Maxim agreed to advise LPHI on matters relating to its capitalization; (c) Maxim agreed to evaluate alternative financing structures and arrangements for LPHI; (d) Maxim agreed to assist LPHI in developing appropriate acquisition criteria and identifying target industries; (e) Maxim agreed to assist LPHI in evaluating, and make recommendations concerning, the relationships among its various lines of business and potential areas for business growth; and (f) Maxim agreed to provide such other financial advisory and investment banking services upon which the parties mutually agreed. Contract, § 1.

In return for these services, under Section 3 of the Contract, LPHI agreed to compensate Maxim as follows: (a) payment of a non-refundable fee of $25,000 payable upon execution of the Contract; (b) granting Maxim a warrant ("Warrant") to purchase 100,000 shares of LPHI common stock exercisable at any time during the five-year period commencing on the date of the

3

Contract at an exercise price of $7.00 per share. Complt., ¶ 9. The Warrant was to include

certain other provisions contained in warrant certificate "delivered to [LPHI] with the

[Contract]". Contract, § 3 (a) (ii). During the negotiation of the Contract, warrant certificates

were available to LPHI. Scott Decl., ¶ 20.[2]

C.    **Maxim Honors its Contractual Obligations**

Maxim complied with all conditions precedent under the Contract. Scott Decl., ¶ 24;

Complt., ¶ 17. Throughout the term of the Contract, Maxim worked faithfully and diligently in

accordance with the terms of its agreement and fully performed all of its obligations under the

Contract. Maxim performed extensive due diligence work to familiarize itself, to the extent

appropriate and feasible, with the business, operations, properties, financial condition,

management, and prospects of LPHI. Scott Decl., ¶ 25-31. Maxim employees performed

continuing research and other due diligence work learning LPHI's life settlement business and

exploring potential ways of inducing investment in the company. Scott Decl., ¶¶ 25-31. Maxim

executives consulted extensively with LPHI executives, including meetings in New York and

Waco, Texas. Scott Decl., ¶ 34-44.

Maxim advised LPHI on matters relating to its capitalization. Scott Decl., ¶ 53. Maxim

evaluated alternative financing structures and arrangements for LPHI. Scott Decl., ¶ 53.

Specifically, Maxim advised LPHI about a possible IPO and consulted with LPHI concerning a

Strategic Settlement Fund for the purpose of acquiring life insurance policies. Scott Decl., ¶ 47-

48.

---

[2]    The foregoing compensation terms were tied only to Maxim's performance of the
services outlined in Section 1 of the Contract and were not contingent on the achievement of any
particular result. Contract, § 3.

Maxim introduced LPHI to numerous potential investors and research analysts in an effort to induce investment in the company. Scott Decl., ¶ 34-37. Maxim's efforts on behalf of LPHI produced results immediately. Several investment funds that were introduced to LPHI by Maxim made investments in the company. On or about December 14, 2004, Wasatch Advisors purchased 90,000 shares of LPHI stock. Schottenfeld Advisors purchased 14,000 shares in November, 2004, and Driehaus also made a significant investment in the same time period. Scott Decl., ¶ 38.

Maxim's efforts on behalf of LPHI produced positive results immediately. As a direct result of Maxim's efforts, LPHI gained institutional investment and enjoyed a rapid and substantial increase in its stock price. At the time Maxim was retained by LPHI on October 28, 2004, its stock was trading at around $5.59 per share. Less than three months later, on January 13, 2005, the stock closed at $8.17 per share, a 46% increase in share price. Scott Decl., ¶ 40-41, Exh. 6.

In mid-January, 2005, however, LPHI announced disappointing earnings and the stock fell as a result. Scott Decl., ¶ 45. Maxim's institutional clients were very disappointed by this unexpected bad news. As a result of this earnings report, the stock price fell back to October, 2004 levels and Maxim was unable to generate further investor interest on the part of its institutional clients. Scott Decl., ¶ 46.

Maxim consulted with LPHI on the possibility of developing a "Strategic Settlement Fund" whereby investors would deposit money into a fund to be used by LPHI to buy and sell life insurance policies. Scott Decl., ¶ 47. LPHI proposed that the investors would share any profits from these transactions and LPHI would earn a management fee. Scott Decl., ¶ 47. LPHI did not have a lead investor for the proposed fund and, more importantly, was unwilling to put up its own capital to initiate the fund. Scott Decl., ¶ 47. Maxim executives had numerous

conversations with Mr. Pardo and the other LPHI executives in which they advised them that it would be difficult to obtain investment in the fund under these circumstances. Scott Decl., ¶ 47. Nevertheless, Maxim attempted to obtain investors for the proposed fund but Maxim's clients were not responsive given LPHI's earnings performance and LPHI's unwillingness to invest its own money in the fund. Scott Decl., ¶ 47.

As an alternative, Maxim proposed to LPHI that it could raise capital for its operations by issuing additional stock through a public offering. Scott Decl., ¶ 48. Maxim executives had numerous conversations with Mr. Pardo and the other LPHI executives about a potential public offering. Scott Decl., ¶ 48. Mr. Pardo rejected this proposal because he felt the LPHI stock price was too low and because he did not want to dilute his ownership in the company. Scott Decl., ¶ 48.

LPHI's stock price continued to languish in 2005 and Maxim's institutional clients were not interested in any further investment. Scott Decl., ¶ 49. Maxim remained available to LPHI to provide investment banking services and, although it never cancelled the Contract, LPHI never contacted Maxim again. Scott Decl., ¶ 49. Following the initial six-month term of the Contract, LPHI stopped communicating with Maxim and requested no further services. Scott Decl., ¶ 49.

**D.    LPHI Breaches the Contract**

LPHI made the initial payment of $25,000 but failed to deliver Maxim's Warrant as required in the Contract. Scott Decl., ¶ 50. Mr. Scott requested on several occasions that LPHI deliver the Warrant as required under the Contract and was assured that it would be delivered – it was not. Scott Decl., ¶ 51.

In September, 2007, Maxim's general counsel contacted LPHI and again requested that LPHI deliver Maxim's Warrant. Rose Decl., ¶ 6. Initially, LPHI CEO Brian Pardo advised Mr. Rose that it would grant Maxim's Warrant as agreed. Rose Decl., ¶ 10. Despite due demand,

LPHI has refused to deliver the Warrant pursuant to the provisions of the Contract and has indicated that it will not honor its obligations. Scott Decl., ¶ 50; Rose Decl., Exh. 9.

**E.      Procedural History**

Plaintiff commenced this action on September 14, 2007 by filing the Complaint. On November 6, 2007, LPHI filed a pre-answer motion to dismiss the complaint under FRCP Rule 12(b)(6), claiming that the complaint inadequately pleaded compliance with a condition precedent. On December 5, 2007, apparently realizing that its pre-answer motion was frivolous on its face, LPHI withdrew its Rule 12(b)(6) motion. See Docket Entry No. 8. On December 5, 2007, LPHI filed this motion for summary judgment.

**LEGAL STANDARD**

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP Rule 56(c). The moving party must demonstrate no genuine issue of material fact either, where the moving party will bear the burden of persuasion at trial, by showing that the facts relevant to the legal theories at issue are undisputed entitling that party to a directed verdict at trial, or where the non-moving party has the burden of proof at trial, by showing either that facts have not been proven by the non-moving party or that an essential element of his claim is invalid. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548, 2557 (1986).

Whether an issue is genuine and material for purposes of summary judgment depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). In deciding a motion for

summary judgment, the court must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Liberty Lobby,* 477 U.S. at 255. Although the court is not permitted to weigh the evidence and determine the truth of the matter, the court can grant summary judgment if, after resolving evidentiary conflicts and drawing all reasonable inferences in favor of the non-moving party, no reasonable jury could find in the non-moving party's favor. *Sorba v. Pennsylvania Drilling Co., Inc.,* 821 F.2d 200, 202-03 (3d Cir. 1987), *cert. denied,* 484 U.S. 1019 (1988). As we snow show, application of these principles mandates denial of LPHI's motion for summary judgment.

**ARGUMENT**

**POINT I**

**<u>MAXIM HAS ESTABLISHED ALL ELEMENTS OF ITS CLAIM</u>**

Maxim's complaint in this case asserts two causes of action for breach of contract seeking, alternatively, money damages or delivery of the Warrant. Maxim has submitted evidence sufficient to establish all of the required elements of a breach of contract claim. For this reason alone, summary judgment must be denied.

A claim for breach of contract, under New York law, must allege: (1) the existence of an agreement between the parties; (2) adequate performance of the contract by plaintiff; (3) breach of the contract by defendant; and (4) damages resulting from the breach. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996); *Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y. 2001). As this Court has noted, "[e]ach element of the claim need not be pled separately; the 'essential elements to pleading a breach of contract under New York law are the making of an agreement, performance by the plaintiff, breach by the defendant, and damages suffered by the plaintiff.'" *Guity v. Martinez,* 2004 WL 1145832 (S.D.N.Y. 2004), *citing Startech, Inc. v. VSA Arts,* 126 F.Supp.2d 234, 236 (S.D.N.Y. 2000).

8

Summary judgment is inappropriate in contract cases where the "interpretation of contract terms or provisions is susceptible to at least two reasonable interpretations, and intent must be gleaned from disputed evidence or from inferences outside the written words." *Yanuck v. Paston & Sons Agency,* 209 A.D.2d 207, 208, 618 N.Y.S.2d 295, 296 (1st Dep't 1994); *Weiner v. Anesthesia Assocs. of Western Suffolk, P.C.,* 203 A.D.2d 454, 455, 610 N.Y.S.2d 606, 608 (2nd Dep't 1994) (noting that where "the terms of the agreement are ambiguous and the intent of the parties becomes a matter of inquiry, parol evidence is permitted to determine that intent").

The evidence submitted by Maxim establishes all of the elements of a cause of action for breach of contract. The existence of a contract is established by the submission of the Contract itself, together with the defendant's admission. Peden Decl., ¶ 3. The Scott Declaration establishes Maxim's performance of its obligations under the Contract. Scott Decl., ¶¶ 23-49. Likewise, the Scott Declaration establishes defendant LPHI's breach of the Contract by reason of its refusal to grant the warrant. Scott Decl., ¶¶ 50-52. Finally, the evidence establishes damages by reason of the refusal to deliver the Warrant. Complt., ¶ 19, 25-27; Scott Decl., ¶¶ 50-52; Rose Decl., ¶¶ 11-14, Exh. 9.

## POINT II

## THERE IS NO CONDITION PRECEDENT UNDER THE CONTRACT

LPHI's motion is based solely on its contentions that the Contract contains a condition precedent requiring Maxim to draft and deliver warrant certificates to LPHI and that Maxim's failure to deliver the warrant certificates mandates dismissal of the complaint. This argument misreads the Contract and misapplies New York law. The provision at issue does not meet the rigorous standard applicable to conditions precedent. In any event, the plain language of the Contact makes clear that the condition was satisfied upon signing the Contract.

A.    **Conditions Precedent Under New York Law**

The New York Court of Appeals has summarized the law of conditions precedent as

follows:

> A condition precedent is an act or event, other than a lapse of time, which,
> unless the condition is excused, must occur before a duty to perform a promise in
> the agreement arises... Conditions can be express or implied. Express conditions
> are those agreed to and imposed by the parties themselves. Implied or
> constructive conditions are those imposed by law to do justice. Express conditions
> must be literally performed, whereas constructive conditions, which ordinarily
> arise from language of promise, are subject to the precept that substantial
> compliance is sufficient ... In determining whether a particular agreement makes
> an event a condition courts will interpret doubtful language as embodying a
> promise or constructive condition rather than an express condition. This
> interpretive preference is especially strong when a finding of express condition
> would increase the risk of forfeiture by the obligee.

*Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 690-91, 636 N.Y.S.2d 734 (1995).

Most conditions precedent describe acts or events which must occur before a party is

obliged to perform a promise made pursuant to an existing contract, a situation to be

distinguished conceptually from a condition precedent to the formation or existence of the

contract itself. *M.K. Metals v. Container Recovery Corp.*, 645 F.2d 583 (8th Cir. 1981). In the

latter situation, no contract arises "unless and until the condition occurs" (Calamari and Perillo,

Contracts § 11-5, at 440 [3d ed] ); Restatement [Second] of Contracts § 224.

In New York, "conditions are **not** favored ... and in the absence of unambiguous

language, a condition will not be read into the contract." *Ginnett v. Computer Task Group, Inc.*,

962 F.2d 1085, 1099-1100 (2nd Cir. 1992)(emphasis added); see also *Kidder Peabody & Co., Inc.*

*v. Unigestion Intern., Ltd.*, 903 F.Supp. 479, 501 (S.D.N.Y. 1995) (holding that "a contractual

duty is not to be construed as a condition precedent unless the language of the contract clearly

imposes such a condition.").

**B.**    **The  Contract Contains No Language Creating a Condition Precedent**

"It is well settled that in disputes involving contract interpretation and conditions

precedent, the courts look to the specific language of the contract." *In re Saranac Central Sch.*

*Dist.*, 253 A.D.2d 566, 567, 686 N.Y.S.2d 869, 870 (3rd Dep't 1998).  In this case, no reasonable

reading of the Contract supports LPHI's contention that delivery of a warrant certificate was a

condition precedent to LPHI's performance.  On this issue, the Contract states, in relevant part,

as follows:

> 3.  Compensation.    As  consideration  for  Maxim's  services  pursuant  to  this
> Agreement,  Maxim  shall  be  entitled  to  receive,  and  the  Company  agrees  to  pay
> Maxim, the following compensation:
>
> > (a)(i) a non-refundable cash fee of $25,000 payable upon execution of this
> > Agreement ("Initial Advisory Fee"), and (ii) The Company shall grant to
> > Maxim  a  warrant  ("Warrant")  to  purchase  100,000  shares  of  the
> > Company's common stock.  The Warrant shall be exercisable at any time
> > during the five year period commencing on the date hereof at an exercise
> > price of $7.00 per share.   The Warrant shall provide for immediate
> > registration  at  the  optionee's  expense  as  well  as  other  provisions,
> > including, without limitation, those pertaining to cashless exercise, anti-
> > dilution protection and piggyback registration rights, **contained in the
> > Warrant  certificates  delivered  to  the  Company  together  with  this
> > Agreement.**

Contract, § 3 (emphasis added).

In making an event a condition, "[p]arties often use language such as **'if,' 'on condition**

**that,' 'provided that,' 'in the event that,' and 'subject to'** ... but other words may suffice." 2

Farnsworth, On Contracts § 8.2 (3rd ed. 2004)(emphasis added).  The Contract contains none of

the typical language found in a condition precedent and **"their absence is probative of the**

**parties' intention that a promise be made rather than a condition imposed...."** 13 Williston,

On Contracts § 38:16 (4th ed. 2000)(emphasis added).

In short, nothing in the Contract that made Maxim's warrant contingent on deliver of

warrant certificates.  Any such reading is undermined by Contract provision providing that the

Warrant vested immediately and was "exercisable at any time during the five year period **commencing on the date**" of the Contract.

**C.    LPHI Grossly Mischaracterizes the Contract**

"When parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Associates, Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990). LPHI's motion ignores this fundamental principle of contract law and bases its motion on gross misreading and mischaracterization of the Contract. Specifically, LPHI claims that Maxim "assumed the duty of drafting and delivering proposed warrant certificates to Life Partners for review, approval, and signature…" LPHI Memo, 8. The Contract says nothing of the sort.

First, the Contract does not require Maxim to draft or deliver any warrant certificates and makes no mention of a review or approval process. The Contract does not specify who was to draft the certificates or even that they were to be drafted, as opposed to referring to pre-existing certificates form other transactions. Indeed, as set forth in the Scott Declaration, Maxim's practice was to use warrant certificates from either its prior deals or from the client's (in this case LPHI's) prior securities transactions. Scott Decl., ¶ 21.

Moreover, by signing the Contract, LPHI expressly acknowledged that the warrant certificates had actually been "**delivered to the Company together with this Agreement.**" This conclusion is further supported by the fact that Maxim's Warrant was "exercisable at any time during the five year period **commencing on the date hereof.**" The Contract plainly did not contemplate any lag time for LPHI's review or approval between execution and the term during which the Warrant was exercisable. In any event, Maxim has established that the certificates were either delivered to LPHI or were available to LPHI from its own prior warrants. Scott Decl., ¶ 21.

Finally, LPHI impermissibly conflates the *pro forma* warrant provisions, for which the warrant certificates were meant to provide sample language, with the essential terms of the warrant itself. As set forth in the Declaration of Cliff Teller, in the securities industry, the essential terms of a warrant are universally understood to be: (a) the identity of the optionee; (b) a description of the stock governed by the warrant; (c) the number of shares to which the warrant applies; (d) the price at which the warrant may be exercised, or the "strike price"; and (e) the time period in which the warrant may be exercised. Teller Decl., ¶ 9. As the Court of Appeals stated even more simply, "stock warrants are contracts entitling the holder to purchase a specified number of shares of stock for a specific price during a designated time period." *Reiss v. Financial Performance Corp.,* 97 N.Y.2d 195, 198, 738 N.Y.S.2d 658, 660 (2001).

The Contract itself sets forth these essential terms of Maxim's Warrant: "The Company shall grant to Maxim a warrant ("Warrant") to purchase 100,000 shares of the Company's common stock. The Warrant shall be exercisable at any time during the five year period commencing on the date hereof at an exercise price of $7.00 per share." To the extent that the warrant certificates are relevant, such relevance is limited to providing sample language "other provisions" relating to registration rights, cashless exercise, and anti-dilution protection.

These "other provisions" are *pro forma* provisions, all intended to protect Maxim and readily understood by anyone in the securities industry or in corporate governance of a public company. Teller Decl., ¶¶ 10-12. It is clear that the "warrant certificates delivered [ to LPHI with the Contract ]" were intended to provide LPHI guidance with respect to the *pro forma* provisions alone, and not with respect to the essential terms of the Warrant. The Teller Declaration explains why LPHI would draft the warrant:

> The reasons for this are that the issuance of securities such as warrants is highly regulated by federal and local securities laws, as well as by the company's governing documents such as shareholder agreements, by-laws, etc. In addition, any warrants issued

by the company will be subject to review by the company's transfer agent which will be familiar with the form used by the company. In short, the company will be most familiar with the laws and rules applicable to the issuance of a warrant and will be in the best position to draft a warrant that will comply with applicable law, its governing agreements, and with its transfer agent's procedures.

<u>Teller Decl.</u>, ¶ 10.

LPHI would have the Court believe it was incapable of drafting Maxim's Warrant without the warrant certificates. Again, Maxim's evidence (before any discovery has been taken) puts the lie to LPHI's unsupported claims. LPHI's public filings show that LPHI well understood *pro forma* warrant provisions by virtue of its having entered a similar contract with an investment banking firm years earlier. <u>Teller Decl.</u>, ¶¶ 21-25, Exh. 8. The earlier contract provided that the warrant was to include all three of the *pro forma* provisions found in the Contract between Maxim and LPHI and describes these provisions as other than being described as "customary" or "pro forma". <u>Teller Decl.</u>, ¶ 24, Exh. 24.

In sum, New York "law does not favor a construction which creates a condition precedent," and "it must clearly appear from the contract itself that the parties intended a provision to operate as a condition precedent" before a clause can properly be construed to do so. *Willis v. Ronan,* 218 A.D.2d 794, 631 N.Y.S.2d 50, 51 (2nd Dep't 1995)(citation omitted). The contractual provision in this case fails to meet this rigorous standard and cannot be construed as a condition precedent. *Manning v. Michaels*, 149 A.D.2d 897, 540 N.Y.S.2d 583, 584 (3rd Dep't 1989) ("the law does not favor a construction which creates a condition precedent"; "[w]e are unpersuaded that [the contract] phrase created a condition precedent since for such a condition to exist it must be apparent from the contract itself that that was the intention of the parties" ); *Unigard Sec. Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 581, 584 N.Y.S.2d 290, 291, 594 N.E.2d 571, 572 (1992) ("[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.); *Lui v.*

14

*Park Ridge at Terryville Ass 'n,* 196 A.D.2d 579, 582, 601 N.Y.S.2d 496, 499 (2nd Dep't 1993) ("The general rule is that it must clearly appear from the contract itself that the parties intended a provision to operate as a condition precedent and that where there is ambiguity in contractual term, the law does not favor a construction which creates a condition precedent.") (internal citations omitted).

**POINT III**

**THE FORFEITURE AND WAIVER DOCTRINES PRECLUDE
LPHI FROM USING THE NON-OCCURRENCE OF A CONDITION
PRECEDENT TO EXCUSE ITS FAILURE TO DELIVER THE WARRANT**

In the event the Court concludes that Maxim was required to draft and deliver warrant certificates as a condition precedent to LPHI's execution and delivery of a Warrant, then Maxim contends that LPHI is precluded under the forfeiture and waiver doctrines from using the non-occurrence of this condition as an excuse for non-payment.

**A.    Forfeiture Doctrine**

Although, as a general rule, conditions precedent must be fully satisfied, "courts have recognized that failure to perform a condition may be excused where there has been substantial performance." *Kennedy v. Automotive Maintenance Inc.,* 87 Misc.2d 190, 191, 384 N.Y.S.2d 921, 922 (Suffolk Co. 1976). In *Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 241 (1921) the Court of Appeals held that "an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture."

New York courts have repeatedly held that the doctrine of substantial performance applies to conditions precedent. *Witherell v. Lasky,* 286 A.D. 533, 536, 145 N.Y.S.2d 624, 627 (4th Dep't 1955) ("the harsh results which may be occasioned by a failure to perform a condition

15

precedent are often softened by the doctrine of substantial performance ....") (citations omitted,

emphasis supplied).

As noted by the court in *Holdeen v. Rinaldo*, 20 A.D.2d 597, 598, 245 N.Y.S.2d 95, 96-

97 (3rd Dep't 1963), "assuming ... that the provisions ... may have been conditions precedent, it

does not necessarily follow that less than full performance would result in complete forfeiture

under the contract. Some conditions, 'though dependent and thus conditions when there is

departure in point of substance, will be viewed as independent and collateral when the departure

is insignificant.'"(citations omitted, emphasis supplied).

Even if the Court were to construe delivery of the warrant as a condition precedent, it

may be excused by the doctrines of forfeiture or waiver. *Oppenheimer & Co., Inc. v.*

*Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 691 (1995). The forfeiture doctrine allows a

court to excuse the non-occurrence of a condition precedent in order to avoid disproportionate

forfeiture. *Id.*; Restatement (Second) Contracts § 229 (1988). The Restatement (Second) defines

forfeiture as:

> [T]he denial of compensation that results when the obligee loses [its] right
> to the agreed exchange after it has relied substantially, as by preparation or
> performance, on the expectation of that exchange.

Restatement (Second) Contracts § 229 comment b (1988).

The purpose of the forfeiture doctrine is to prevent the failure of a non-material condition

from excusing a party from performing when non-performance (usually payment) would cause

the other party to forfeit its benefit of the bargain. *Oppenheimer & Co., Inc.,* 86 N.Y.2d at 695.

In this case, application of the forfeiture doctrine requires denial of LPHI's motion. Following

the execution of the Contract, Maxim performed substantial investment banking services for

LPHI. Scott Decl., ¶¶ 24-49.

**B.     Waiver**

Moreover, the doctrine of waiver also applies to relieve Maxim of any condition

precedent. "[W]here it becomes clear that one party will not live up to a contract, the aggrieved

party is relieved from the performance of futile acts or conditions precedent." *Sunshine Steak*

*Salad & Seafood, Inc.,* 135 A.D.2d 891, 522 N.Y.S. 2d 292 (3rd Dep't 1987). Additionally,

where a party to a contract commits either a material breach or a breach which affects the very

essence of an agreement and defeats its purpose, the non-breaching party is entitled to suspend its

performance. *USA Network v. Jones Intercable, Inc.,* 729 F.Supp. 304, 311 (S.D.N.Y. 1990) (a

non-breaching party is entitled to suspend performance under a contract if the breach "...affects

the very essence of the contract and serves to defeat the object of the parties.")(citation omitted);

In this case, LPHI has made it clear to Maxim that it would not grant Maxim's Warrant

thereby relieving any obligation to comply with a condition precedent. Rose Decl., ¶¶ 12-13,

Exh. 9. *Allbrand Discount Liquors, Inc. v Times Square Stores Corp.,* 60 AD2d 568, 399

NYS2d 700 (2nd Dep't 1977); *In re New York Housing Development Corp.,* Not Reported in

F.Supp., 1987 WL 494921 (S.D.N.Y. 1987).

In addition, under traditional waiver principles, a party may also waive adherence to or

compliance with contractual provisions through their conduct or a pattern of conduct. *Aini, et al.*

*v. Sun Taiyang Co., Ltd., et al.,* 964 F. Supp. 762, 779 (S.D.N.Y. 1997). Under the terms of the

Contract, LPHI had the right to terminate the Contract. Contract, § 8. However, they never did

so. Where a contract provides a mechanism whereby one party can elect to avoid the contract or

a term thereof, if the party does not so elect, instead permitting the contract to continue, that

party waives his right to avoid the contract or term thereof. *Schenectady Steel Co., Inc. v. Bruno*

*Trimpoli General Construction Co., Inc.,* 43 A.D.2d 234, 237, 350 N.Y.S.2d 920 (3rd Dep't

1974); see also *Praver v. Remsen Assoc.,* 150 A.D.2d 540, 541 (2nd Dep't 1989).

## CONCLUSION

For the reasons discussed herein, plaintiff Maxim Group LLC respectfully requests that the Court deny defendant's motion for summary judgment in its entirety, and that it grant such further relief as to the Court seems just and proper.

Dated: New York, New York
      January 25, 2008

SCHWARTZ & PONTERIO, PLLC
*Attorneys for Plaintiff*

By: _____

Matthew F. Schwartz (MS 9843)
134 West 29th Street – Suite 1006
New York, New York 10001
Telephone: (212) 714-1200