UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

MAXIM GROUP LLC,

                Plaintiff,

      - against -                Case No. 07 CV 8099 (LAP)

LIFE PARTNERS HOLDINGS, INC.,

                Defendant.
_____

### SECOND DECLARATION OF R. SCOTT PEDEN IN SUPPORT OF LIFE PARTNERS HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT

1.    My name is R. Scott Peden. On or about December 5, 2007, I submitted a Declaration in support of Life Partners Holdings, Inc.'s ("Life Partners") motion for summary judgment. I submit this Second Declaration in further support of that motion and in reply to papers submitted in opposition by plaintiff Maxim Group LLC ("Maxim"). I have personal knowledge of the facts stated in this Declaration.

2.    As I advised the Court in my First Declaration, I am Corporate Secretary of Life Partners. I am also President and General Counsel of Life Partners, Inc. ("LPI"), a wholly-owned subsidiary of Life Partners. I have been employed by LPI since 1991. From 1991 to 2000, I served as Vice President and General Counsel of LPI. The sole office of Life Partners and LPI is in Waco, Texas, where I have my office.

3.    I have reviewed a declaration of Edward L. Rose, Maxim's Vice Chairman and General Counsel, submitted to the Court in opposition to the pending motion of Life Partners for summary judgment. Mr. Rose declares that he contacted me

on or about September 6, 2007, seeking a warrant referred to in a contract between Maxim and Life Partners, executed on or about October 25, 2004, and that Life Partners thereafter failed to get back to him.

4. Mr. Rose did in fact reach me by telephone on or about September 6, 2007, seeking the warrant. I told him that I did not recall any contract between Maxim and Life Partners or any such warrant and could only recall a research report on Life Partners which Maxim had prepared. Maxim issued a research report on Life Partners with a "buy" recommendation for its stock on or about September 27, 2004, one month before the contract

5. After speaking with Mr. Rose, I caused a search to be done of Life Partners' books, records and electronic communications, and I spoke to others at Life Partners. I located the contract and evidence that Life Partners had paid $25,000 to Maxim as a non-refundable retainer, but found no warrant, no warrant certificates nor any other documents evidencing the fact of a warrant agreement. Nor did I find evidence that Maxim had performed under the contract. Upon the completion of my search, I concluded that Mr. Rose's telephone call was an opportunistic attempt to capitalize inappropriately on the rise in value of Life Partners' stock in 2007 and reap an undeserved windfall.

6. Meanwhile, we attempted to seek legal advice from outside counsel at Baker & McKenzie, but were advised of a conflict of interest that prevented that firm from advising us. A second firm that we consulted thereafter also had a conflict of interest. On September 14, 2007, about one week after Mr. Rose's initial telephone call to me, Maxim filed this lawsuit with the Court. We were not able to speak to and engage

our current counsel on this matter, the firm of LeClair Ryan, until September 19 or 20, 2007.

Dated: February 18, 2008

Signed under penalties of perjury by:

_____
R. Scott Peden